IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Textron Financial Corporation, )
)
    Plaintiff, )
)
    v. ) Case No. 1:09-cv-1202 (GBL)
)
AIC of Manassas, Inc., )
AIC of Glen Burnie, Inc., )
D.N. Motors, Inc., )
American Import Center, Inc., )
AIC Properties, LLC, )
JNC Auto, LLC, )
Dornik, LLC, )
JAB 1 Enterprises, LLC, )
Seyed Halatai, )
Adel Tajdar, and )
Nomie D. Bates, )
)
    Defendants. )

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Plaintiff Textron Financial Corporation's ("Textron") Motion for Attorneys' Fees and Costs. (Dkt. No. 70.) This case concerned Textron's claims against Defendant AIC of Manassas, Inc. ("AIC") and several Guarantors for AIC's failure to remit payment on vehicles sold in accordance with the parties' Credit and Security Agreement (the "Financing Agreement"). By Order dated April 30, 2010, the Court granted Textron's Motion for Summary Judgment on Counts I and III through XII and denied Defendants' Motion for Partial

1

Summary Judgment. (Dkt. No. 65.) On May 5, 2010, Textron voluntarily dismissed Counts II and XIII. (Dkt. No. 66.) By Order dated June 7, 2010, the Court directed the Clerk to enter judgment for Textron against Defendants in the amount of $364,777.02, plus prejudgment interest. (Dkt. No. 78.) Textron now moves the Court for attorneys' fees and other necessary expenses pursuant to the Financing Agreement. (Dkt. No. 70.)

There are three issues before the Court. The first issue is whether the plaintiff's attorneys' claimed fees represent a reasonable number of hours at a reasonable rate charged in litigating this action. The second issue is whether the Court should reduce the proposed attorneys' fee amount where Textron includes fees and expenses associated with unsuccessful or unrelated claims. The third issue is whether expenses for document reproduction, document delivery, travel, Westlaw fees, and *pro hac vice* filing fees are properly claimed as costs.

The Court grants Textron's Motion for Attorneys' Fees and Costs in the total amount of $98,633.68, representing $93,482.50 in fees and $5,151.18 in costs, for three reasons. First, the Court finds the number of hours claimed and the rate charged reasonable because many of the hours expended were necessitated by Defendants' actions throughout the litigation, and because Textron's attorneys billed at reasonable reduced rates. Second, the Court reduces the claimed fee amount from $97,268.50 to

$93,482.50 because Textron's calculation improperly includes fees and expenses associated with Textron's detinue and fraudulent conveyance claims. Finally, the Court awards Textron costs in the amount of $5,151.18, which includes document delivery, document reproduction, travel, Westlaw usage, and *pro hac vice* filing fees, because such expenses are authorized by the parties' Financing and Guaranty Agreements.

## I. BACKGROUND

This action arises from AIC's and its Guarantors' default on their contractual obligations to Textron in connection with an auto dealer's floor plan financing of automobiles. Textron is a commercial financing company that provides financing programs for products manufactured by its parent company, Textron, Inc., and other ventures. AIC is a Virginia-based automobile dealership which sells vehicles to retail customers.

On December 5, 2007, AIC entered into the Financing Agreement with Textron to finance its acquisition of vehicles. The Financing Agreement required AIC to remit payment to Textron for every vehicle sold that had been initially purchased by AIC through Textron's financing. The Financing Agreement also provided that:

> Debtor [AIC] is also responsible to pay all other costs and expenses incurred by Secured Party [Textron] in connection with this Agreement, including but not limited to attorneys' fees and other legal expenses in

3

connection with or arising out of any deficiency suit, collection actions or otherwise following an Event of Default.

(Financing Agreement ¶ 11.)

On December 5, 2007, Textron also entered into ten separate agreements with AIC of Glen Burnie, Inc., D.N. Motors, Inc., American Import Center, Inc., AIC Properties, LLC, JNC Auto, LLC, Dornik, LLC, JAB 1 Enterprises, LLC, Seyed Halatai, Adel Tajdar, and Nomie D. Bates, as Guarantors of AIC's obligation to Textron (the "Guaranty Agreements"). Each of the Guaranty Agreements provided that the Guarantors would pay Textron any amounts due and outstanding by AIC. (Guaranty Agreements ¶ 1.) The Guaranty Agreements further provided that each "Guarantor shall be liable for all attorneys' fees and other costs and expenses incurred by Textron in connection with Textron's enforcement of th[e] Guaranty." (Guaranty Agreements ¶¶ 1, 6.)

On August 27, 2009, Textron discovered that AIC had sold twenty-four vehicles financed by Textron but had failed to remit payment for all but one of those vehicles. (Pl.'s Mem. Supp. Mot. Summ. J. Ex. 1, Answer to Interrog. No. 6.) Accordingly, on November 2, 2009, Textron filed its Amended Complaint against AIC and the ten Guarantors of AIC's obligation, alleging breach of contract against all Defendants and action on account and detinue against AIC. (Dkt. No. 6.) Although Textron's attorneys contemplated and researched their ability to bring a

fraudulent conveyance claim against AIC, they never did. Textron's attorneys, however, billed 14.9 hours for time spent on the detinue, action on account, and fraudulent conveyance claims. (Pl.'s Mem. Supp. Mot. Att'ys Fees Ex. 1).

During discovery, Textron's attorneys served eleven separate sets of interrogatories, requests for admissions, and requests for production of documents due to the number of Defendants in this case. (Pl.'s Mem. Supp. Mot. Att'ys Fees 2.) Additionally, because the Defendants, both corporate entities and natural persons, resided in different jurisdictions, Textron's attorneys spent time determining how to effect service of process in each of those jurisdictions. (Pl.'s Mem. Supp. Mot. Att'ys Fees 2-3.)

Although Textron and AIC attempted settlement on numerous occasions, AIC insisted that its Financing Agreement with Textron should and would be invalidated. (Pl.'s Reply Mem. Supp. Mot. Att'ys Fees 2.) Ultimately, the parties were unable to settle and proceeded to summary judgment.

On April 2, 2010, the parties filed cross-motions for summary judgment. (Dkt. Nos. 54 & 58.) Textron moved for summary judgment on its breach of contract claims against all Defendants, jointly and severally, in the amount of $364,777.02. (Pl.'s Mem. Supp. Mot. Summ. J. 1.) AIC moved for summary judgment that its contract with Textron was terminated and thus

foreclosed Textron's ability to enforce the provision to collect attorneys' fees and costs. (Defs.' Mem. Supp. Mot. Partial Summ. J. 1-2.)

Throughout the litigation, Defendants' attorney argued "new law would be made," rendering Textron's agreements with it and others unenforceable. (Pl.'s Reply Mem. Supp. Mot. Att'ys Fees 1 & 2.) As a result, Textron's attorneys drafted a summary judgment motion containing seventy specific factual assertions with references to AIC's Answer. (Pl.'s Mem. Supp. Mot. Att'ys Fees 3.)

Upon submitting its Motion for Summary Judgment, Textron's attorneys began preparation for a subsequent trial. (Pl.'s Reply Mem. Supp. Mot. Att'ys Fees 2.) Textron's attorneys interviewed witnesses, procured affidavits and records, and focused on an effective trial strategy. (Pl.'s Reply Mem. Supp. Mot. Att'ys Fees 2-3.)

On April 30, the Court granted Textron's Motion for Summary Judgment on all counts except as to the action on account and detinue counts of the Complaint. (Dkt. No. 65.) By the same Order, the Court denied AIC's Motion for Partial Summary Judgment. (Dkt. No. 65.) In granting Textron's Motion, the Court acknowledged that Textron is entitled to an award of its attorneys' fees and costs pursuant to its Financing Agreement and Guaranty Agreements with AIC and its ten Guarantors.

Thereafter, Textron filed a Stipulation of Dismissal as to the action on account and detinue counts. (Dkt. No. 66.) By Order dated May 6, 2010, the Court accepted Textron's Stipulation and dismissed the action on account and detinue counts of Textron's Complaint. (Dkt. No. 67.) By Order dated June 7, 2010, the Court directed the Clerk to enter judgment for Textron against Defendants in the amount of $364,777.02, plus prejudgment. (Dkt. No. 78.) Textron now moves the Court for $102,419.68 in attorneys' fees and costs.

## II. STANDARD OF REVIEW

Under the "American Rule," parties are responsible for their own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). As such, courts generally will not award attorneys' fees absent explicit statutory authority. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814-15 (1994).

However, even in the absence of explicit statutory authority, parties may incorporate fee shifting provisions in their contracts. *See Sun Ref. & Mktg. Co. v. FCF Enter., Inc.*, Nos. Civ. A. 91-0501, Civ. A. 92-0132, 1995 WL 17017116, at *2 (D.R.I. Jan. 26, 1995) (upholding parties' ability to contract for award of attorneys' fees and costs to a prevailing party). Under Rhode Island law, attorneys' fees are properly awarded

7

where the parties have contractually agreed to such an award.[1]
*Id.*

When attorneys' fees are authorized, a court must undertake three analytical steps in calculating an award of fees to ensure the amount is reasonable. *See Robinson v. Equifax*, 560 F.3d 235, 243-44 (4th Cir. 2009). First, a court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* at 243 (citing *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Second, after "determining the [reasonableness of the] figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244 (internal citation omitted). Third, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

### III. ANALYSIS

The Court grants Textron's Motion for Attorneys' Fees and Costs in the total amount of $98,633.68, representing $93,482.50 in fees and $5,151.18 in costs. The Court finds the $97,268.50 in fees reasonable as to both the hours expended and rate charged. However, pursuant to the second step in the *Robinson* analysis, the Court reduces the amount from $97,268.50 to

---
[1] Rhode Island law governs the Agreement. (Financing Agreement ¶ 16.)

8

$93,482.50 because the amount requested includes time spent on unsuccessful and unrelated claims. The Court need not discuss the third step of the *Robinson* analysis in depth because AIC does not challenge the degree of success obtained by Textron, and the Court finds no reduction necessary as Textron prevailed on each of the claims it pursued. Finally, the Court awards Textron costs in the amount of $5151.18, which includes document delivery, document reproduction, travel, Westlaw usage, and *pro hac vice* filing fees, because such expenses are authorized by the parties' Financing and Guaranty Agreements.

A. Lodestar Figure

Textron's proposed lodestar figure encompasses a reasonable number of hours at a reasonable rate charged because many of the hours expended were necessitated by Defendants' actions throughout the litigation, and because Textron's attorneys charged reasonable reduced billing rates. When calculating a reasonable award of attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson*, 560 F.3d at 243. A court's discretion in determining the reasonableness of both hours and rate is guided by twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill

> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (7) the time limitations imposed by the
> client or circumstances; (8) the amount in controversy
> and the results obtained; (9) the experience,
> reputation and ability of the attorney; (10) the
> undesirability of the case within the legal community
> in which the suit arose; (11) the nature and length of
> the professional relationship between attorney and
> client; and (12) attorneys' fees awards in similar
> cases.

*Robinson*, 560 F.3d at 243 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974))). The attorneys' fees applicant should "submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). "In addition to the attorney's own affidavits, the fees applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work for which [it] seeks an award." *Comstock Potomac Yard, L.C. v. Balfour Beatty Const., L.L.C.*, No. 1:08cv894, 2010 WL 678129, at *26 (E.D. Va. Feb. 23, 2010) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990)). Examples of what constitutes satisfactory specific evidence "sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of

the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245; *Plyler*, 902 F.2d at 278 ("[A]ffidavits testifying to [the fee applicants'] own rates, experience and skills as well as affidavits of South Carolina lawyers who were familiar both with the skills of some of the [fee] applicants and more generally with civil rights litigation in South Carolina . . . . [were] sufficient evidence of the prevailing market rates . . . .").

The Court finds the hours expended and rate charged reasonable and properly documented. Textron submitted two separate affidavits from Mr. John Morris and Ms. Laura Miller, two practitioners in the Eastern District of Virginia experienced with cases involving awards of attorneys' fees, attesting that both the number of hours expended and the rates charged by Textron's attorneys are reasonable. (Pl.'s Mem. Supp. Mot. Att'ys Fees Exs. B & C.) Specifically, the affiants attested to the reasonableness of the rates charged by Textron's senior attorney, Mr. Bay, associate attorneys, and paralegals. (Pl.'s Mem. Supp. Mot. Att'ys Fees Exs. B & C.) As a result of Defendants' challenge to the enforceability of the Financing and Guaranty Agreements, Textron's attorneys did a substantial amount of work, including the preparation of a substantial summary judgment brief, the interviewing of witnesses, and the preparation of affidavits and exhibits (Pl.'s Reply Mem. Supp.

Mot. Att'ys Fees 2-3), all of which were reasonable under the circumstances here. Therefore, the Court finds that Textron's proposed lodestar figure encompasses a reasonable number of hours at a reasonable rate charged.

Defendants argue that the first *Johnson* factor is not satisfied because Textron's expenditure of nearly 400 hours to litigate this case "far exceeds the bounds of reasonableness." (Defs.' Mem. Opp'n to Pl.'s Mot. Att'ys Fees 1.) Defendants further argue that, because they "made significant attempts to minimize attorneys' fees," this Court should reward Defendants for "narrowly focusing their litigation" by ordering a sum substantially less than Textron seeks. (Defs.' Mem. Opp'n to Pl.'s Mot. Att'ys Fees 4.) Specifically, Defendants submit that they sought minimal discovery, all used the same attorney, and rarely opposed Textron, the proof of which can be seen in the fact that "the parties only appeared . . . once on a contested motion." (Defs.' Mem. Opp'n to Pl.'s Mot. Att'ys Fees 5.) Further, Defendants offer that 148 hours of time and labor, not the 371.5 hours of time Textron requests, represents a reasonable amount in this case. (Defs.' Mem. Opp'n to Pl.'s Mot. Att'ys Fees Ex. B, at ¶ 6.)

The Court rejects Defendants' argument for three reasons. First, the Court finds the number of hours reasonable because many of the hours expended were necessitated by Defendants'

actions throughout the litigation. Although Defendants now argue that they did not contest ninety-six percent of the amount sought by Textron for breach of contract, at no point in time did Defendants ever admit liability to Textron for breaching their contractual obligations. At no point did Defendants tender an offer of judgment under Federal Rule of Civil Procedure 68 to acknowledge that a portion of the claims were not contested. In fact, because Defendants litigated this matter all the way through summary judgment, Textron was responsively required to prepare at each step of the way in contemplation of a potential trial. (Pl.'s Reply Mem. Supp. Mot. Att'ys Fees 2.) Notably, Textron's billing entries are replete with entries demonstrating its attempts to settle with Defendants. (Pl.'s Mem. Supp. Mot. Att'ys Fees Ex. 1.) However, because neither Defendants nor Textron could find a common ground before the summary judgment stage, more hours were necessarily and reasonably expended.

Second, the number of hours was reasonable because this case was procedurally burdensome. Textron meticulously ensured that each of the eleven Defendants received proper service of process in their jurisdictions. Likewise, Textron also produced and served eleven separate sets of interrogatories, requests for admissions, and requests for production of documents on Defendants. (Pl.'s Mem. Supp. Mot. Att'ys Fees 2-3.)

Additionally, Defendants forced Textron to draft a very detailed summary judgment brief because of their position asserting the unenforceability of the Financing Agreement. (Pl.'s Mem. Supp. Mot. Att'ys Fees 3.) Thus, additional hours were reasonably expended in these pursuits.

Third, Defendants offer no specific reasons why the Court should accept their hours calculation instead of Textron's. Defendants proffer a chart concluding 148 hours is reasonable as opposed to the 371.5 hours claimed by Textron. (Defs.' Opp'n Pl.'s Mem. Supp. Att'ys Fees 5-6.) However, Defendants do not specifically articulate what was unreasonable about Textron's expenditure of hours on various tasks. Without a clear showing of why 371.5 hours is truly unreasonable for this case, the Court is unpersuaded by Defendants' argument as to the reasonableness of hours and rate under the first *Johnson* factor.

Defendants also briefly challenge the third *Johnson* factor, the skill required to properly perform the legal services rendered. Defendants argue that this case was "the most basic form of litigation" and "could easily have been handled by a single attorney with relatively little experience but guided by a senior attorney." (Defs.' Opp'n Pl.'s Mem. Supp. Att'ys Fees 7.)

The Court finds Defendants' arguments irrelevant because Textron was entitled to the representation of its choosing. The

possibility that Textron might hire an entire legal team was presumptively contemplated by the parties at the time they entered into the Financing and Guaranty Agreements. Accordingly, the Court will not conclude the lodestar figure is unreasonable as to hours or rate under *Johnson's* third factor simply because this case might or could have been tried with fewer resources than Textron elected to use. Thus, in analyzing the *Johnson* factors, the Court finds that the hours and rate claimed by Textron are reasonable.

B. Reduction for Unsuccessful and Unrelated Claims

Although the Court finds the hours expended and rate charged by Textron's attorneys were reasonable, the Court finds a reduction appropriate because the claimed fee amount improperly includes fees and expenses associated with Textron's unsuccessful detinue and fraudulent conveyance claims. After "determining the [reasonableness of the] figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Comstock*, 2010 WL 678129, at *26.

Here, Textron's requested fees improperly include time spent on the detinue and fraudulent conveyance issues because the former claim was dismissed and the latter never brought by Textron. Thus, time spent on these claims must be excised from

the lodestar calculation pursuant to the second step in the *Robinson* analysis. The attorneys' first invoice indicates that Mr. Bay, Ms. Gammell, and Ms. Muzzarelli spent approximately 14.9 hours working on the detinue and fraudulent conveyance claims. (Pl.'s Mem. Supp. Mot. Att'ys Fees Ex. 1). The fees charged for that work total $3786.00. Accordingly, the Court reduces the requested fee amount by $3786.00, resulting in a new lodestar figure $93,482.50.

### C. Other Costs and Expenses

The Court awards Textron costs in the amount of $5151.18 for document delivery, document reproduction, travel, Westlaw usage, and *pro hac vice* filing fees, because such expenses are authorized by the parties' Financing and Guaranty Agreements. In addition to the provision of reasonable attorneys' fees, the Financing Agreement also provides for "other legal expenses in connection with or arising out of any deficiency suit." (Financing Agreement ¶ 11.) Further, the Guaranty Agreements provide that AIC's Guarantors "shall be liable for all attorneys' fees and other costs and expenses incurred by Textron in connection with Textron's enforcement of this Guaranty." (Guaranty Agreement ¶¶ 1, 6.) It is clear to the Court that "other legal expenses" include costs for document delivery,

document reproduction, travel, Westlaw usage, and *pro hac vice* filing fees.

Defendants argue that these costs are not properly includible because this case could have been tried by Textron's local counsel, Ms. Gammell. (Defs.' Mem. Opp'n to Pl.'s Mot. Att'ys Fees 10.) The Court rejects this argument because Textron is entitled to the representation of its choosing. Thus, the award of costs is not affected by whether Textron's attorneys chose to allocate tasks to local counsel or instead to other counsel who incurred travel expenses, so long as those costs were contemplated by the parties in their Financing and Guaranty Agreements. The Court finds that the language in these Agreements indicates that the parties did not intend to limit the definition of "costs" in any meaningful way. Therefore, the Court finds costs in the amount of $5151.18 properly awarded.

## IV. CONCLUSION

The Court grants Plaintiff's Motion for Attorneys' Fees and Costs because Textron's request for fees represents a reasonable number of hours at a reasonable rate charged. However, the Court reduces the claimed amount by $3786.00 because Textron's request includes time spent on unsuccessful and unrelated claims. Additionally, the Court finds that costs in the amount

of $5,151.18 are properly awarded pursuant to the Financing and Guaranty Agreements. Therefore, it is hereby

ORDERED that Plaintiff Textron Financial Corporation's Motion for Attorneys' Fees and Costs is GRANTED. Defendants AIC of Manassas, Inc., AIC of Glen Burnie, Inc., D.N. Motors, Inc., American Import Center, Inc., AIC Properties, LLC, JNC Auto, LLC, Dornik, LLC, JAB 1 Enterprises, LLC, Seyed Halatai, Adel Tajdar, and Nomie D. Bates are, jointly and severally, liable to Textron Financial Corporation for attorneys' fees and costs in the total amount of $98,633.68, representing $93,482.50 in fees and $5,151.18 in costs.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this 23rd day of July, 2010.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia